THE HON. GEORGE R. MILBURN,
THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.

---

COMMISSIONERS:

HON. JOHN B. CLAYBERG,

HON. HENRY N. BLAKE,

HON. W. H. POORMAN.

---

BORDEAUX, RESPONDENT, v. BORDEAUX, APPELLANT.

(No. 1,787.)

(Submitted May 2, 1904.  Decided March 13, 1905.)

*Divorce—Suit Money—Counsel Fees—Refusal to Allow—Pre-judice—Findings—Implied—Supplemental Transcript—Appeal—Review—Condonation—Evidence.*

Divorce—Suit Money—Counsel Fees—Denial—Harmless Error.
 1. Defendant in an action for divorce moved, before trial, for suit

(159)

| | |
|---|---|
| 32 | 159 |
| 32 | 376 |
| 32 | 391 |
| 32 | 159 |
| 33 | 266 |
| 32 | 159 |
| 35 | 160 |
| 35 | 363 |
| 36 | 42 |
| 36 | 56 |
| f36 | 88 |
| 36 | 90 |
| 32 | 159 |
| 38 | 41 |
| f38 | 484 |
| 38 | 555 |
| 32 | 159 |
| f39 | 370 |
| 39 | 494 |
| 32 | 159 |
| 41 | 9 |
| 41 | 453 |
| 41 | 555 |
| 32 | 159 |
| f40 | 351 |
| 40 | 555 |

money and counsel fees; the application, however, was heard during its progress. No request for continuance was made on any ground. It appeared that she had spent about $1,000 in preparing the case, and that she owed $900 of this sum. She was represented by eminent counsel during the entire trial, and the record failed to show that she did not have all the witnesses she desired or all the information concerning plaintiff's witnesses necessary to conduct her defense successfully. *Held,* that under such circumstances, a denial of attorneys' fees and a refusal to allow more than $200 suit money was not prejudicial error, if error at all.

Implied Findings—Request—Exceptions—Appeal.
2. Under the doctrine of implied findings, a judgment will not be reversed for want of findings, unless the party aggrieved shall have requested them in writing, caused such request to be entered in the minutes of the court, and made and saved exceptions to the action of the court, in accordance with the requirements of section 1114 of the Code of Civil Procedure.

Appeal—Supplemental Transcript—Certificate—Findings.
3. A supplemental transcript containing findings rejected by the trial court, which formed no part of the judgment roll, or of the statement on motion for new trial, or of any bill of exceptions settled by the court, authenticated only by a certificate of the clerk, will be disregarded on appeal.

Divorce—Condonation—Special Defense—Pleadings.
4. While, generally speaking, condonation in an action for divorce is a special defense not available unless pleaded, yet when, though not pleaded, the issue has been contested in the evidence without objection, and it clearly appears that the offense alleged in the complaint has been condoned, the divorce will be denied.

Findings—Supreme Court—Will Make Its Own Conclusions—When.
5. Under Act of 1903 (Laws 1903, 2d Extra. Session, p. 7), making it the duty of the supreme court to determine questions of fact, unless for a good reason a new trial or the taking of other evidence in the district court be ordered, the supreme court will hesitate to overturn findings based on substantially conflicting evidence which would justify an inference in favor of either party; but where the conflict is trifling or unsubstantial, or where the evidence preponderates decidedly against the findings, the supreme court may examine the facts, make up its own conclusion, and declare upon the rights involved accordingly.

Divorce—Condonation—Evidence—Sufficiency.
6. In divorce, evidence considered, and *held* sufficient to show that the offense charged in the complaint, if committed, had been condoned.

ON REHEARING. Judgment for plaintiff and order denying new trial reversed. (For former opinion, see 30 Mont. 36.)

*Mr. John J. McHatton, Mr. Jesse B. Roote,* and *Mr. William A. Clark, Jr.,* for Appellant.

*Mr. B. S. Thresher,* and *Mr. C. F. Kelley,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

It is not necessary to state again the issues presented by the pleadings and tried in the district court. These are stated in full in the former opinion. (30 Mont. 36, 75 Pac. 524.) At the former hearing the respondent was not represented by counsel, nor was a brief filed in his behalf. A rehearing was granted for the reason that the court was in doubt whether its decision in the case was not based upon considerations which were not properly presented by the record. We shall first notice the contentions of the parties as to the correctness of the conclusions stated in the former opinion, and then make further reference to the evidence and to the principles of law which we deem applicable.

1. Suit money and counsel fees: Counsel for respondent contend that the order of August 17, 1901, making the allowance for suit money and denying counsel fees was an appealable order, and as such cannot be reviewed on this appeal, no matter whether or not the court abused its discretion in the premises. It is argued that this position is sustained by the decisions in *In re Finkelstein,* 13 Mont. 425, 34 Pac. 847; *State ex rel. Nixon* v. *District Court,* 14 Mont. 396, 40 Pac. 66, *Bordeaux* v. *Bordeaux,* 29 Mont. 478, 75 Pac. 359, *Sharon* v. *Sharon,* 67 Cal. 185, 7 Pac. 456, 635, 8 Pac. 709, *White* v. *White,* 86 Cal. 212, 24 Pac. 1030, and the provisions of section 1742 of the Code of Civil Procedure. If the order is appealable under the provisions of section 1722 of the Code of Civil Procedure, as amended by the act of 1899 (Laws 1899, p. 146), then by the provisions of section 1742, *supra,* it may not be reviewed upon appeal from the judgment, it not being an intermediate order within the meaning of that section. (*Finlen* v. *Heinze,* 27 Mont. 107, 69 Pac. 829, 70 Pac. 517.)

In all the cases cited by counsel, except the case of *White* v. *White,* the particular order complained of was one in effect a final judgment allowing a specific sum for alimony and counsel fees or suit money. It was held that such an order falls

within the statute (section 1722, as amended), because it is *a* final judgment in the case.

The case of *White* v. *White* was one in which an application for alimony was denied. The court, without discussion, or giving any reason for its conclusion, held such an order appealable, remarking: "With respect to the right of appeal, there would seem to be no distinction on principle between an order denying and an order granting alimony *pendente lite.*" On principle, there seems to us to be a wide distinction; for an order granting alimony finally adjudges that the husband must pay a specific sum of money to his wife or her counsel, and in some cases awards execution for it. The order denying the application merely refuses for the time being to make a requirement to pay, there being nothing in the nature or form of it to give it any of the characteristics of a final judgment. While an appeal does lie from the former, it does not seem to follow, as a matter of course, that such is the case with the latter. The view we have taken of this case, however, renders unnecessary a discussion and determination of this distinction, if it exists, and the rights of the wife in the premises; for, though the order be not appealable, and therefore reviewable on this appeal as affecting the judgment, yet upon the showing presented in the record we do not think this action of the court prejudiced the defendant.

The application for suit money and counsel fees, though made before the trial, was heard during its progress. The trial opened and proceeded to the time of the hearing of the motion without an application for a continuance on the ground that the defendant had no counsel, or on the ground that she was not prepared for trial, or on any other ground. Though the defendant knew perfectly well what her necessities were, she proceeded with the trial, and did not at any time during its progress indicate to the court that she could not proceed without imperiling her rights. At the same time it appears that she was represented by eminent counsel, who do not seem to have relaxed their efforts in her behalf in any degree because their fees were not provided for. Nor is there in the record

any fact supporting the idea that she did not have all the witnesses she desired, or all the information concerning the plaintiff's witnesses necessary to conduct her defense as successfully as she would had an additional allowance been made. Her application shows that she had spent about $1,100 in investigating the plaintiff's witnesses, and that she owed her agents about $900 of this sum. It cannot be a ground for reversing the judgment that the court did not grant her, besides the $200, an additional allowance to pay witness fees and other charges, and to liquidate her liabilities to her agents for the work theretofore done by them, when it does not appear that she suffered for the want of any testimony whatsoever. An additional allowance might well have been made upon her showing, and perhaps the court erred in the exercise of its discretion in not making it. It is not apparent, however, that any prejudice was done by the court's action.

2. As to the findings: On motion the court adopted findings 1, 2, 3, 4, 5, 6, and 7 returned by the jury in favor of the plaintiff, and made an additional one as to plaintiff's residence. All the other findings were rejected. The decree was entered in accordance with these findings, and they are sufficient to support it. The defendant requested other findings, but what they were the record does not disclose. There is in the record no bill of exceptions showing that the defendant, at the close of the evidence and argument in the cause, made written request for findings upon the subject of recrimination, or any other issue, and had the request entered in the minutes of the court, nor that any exception was taken to the action of the court in refusing to make the requested findings, as provided in section 1114 of the Code of Civil Procedure. Under these circumstances the judgment may not be reversed because of any defect in the findings, or any failure on the part of the court to make a finding upon any particular issue (Section 1114, *supra; Gallagher* v. *Cornelius et al.,* 23 Mont. 27, 57 Pac. 447; *Haggin* v. *Saile et al.,* 23 Mont. 375, 59 Pac. 154; *Currie* v. *Montana Central Ry. Co.,* 24 Mont. 123, 60 Pac. 989), for, under this provision of the statute, every finding necessary to

support the judgment will be presumed, and the failure of the court to make specific findings upon the issues made upon the affirmative matter alléged in the answer is not ground for reversal of the judgment, in the absence of a specific showing by way of bill of exceptions reserved upon the court's ruling, and made a part of the record.

Before the hearing the appellant asked and obtained leave to file a supplemental transcript embodying the findings rejected by the court. This supplement was treated as a part of the record, and the opinion of the court was based in part upon the showing supposed to be made by it. Respondent has called attention to the fact that the matters embodied therein formed no part of the judgment-roll, or of the statement on motion for new trial, or of any bill of exceptions settled by the court, being authenticated only by a certificate of the clerk. For this reason they have on this investigation been excluded from consideration, with the result, already stated, that there is nothing in the record preserved under the requirements of the statute, from which it appears that the court committed error in refusing to make any findings, or in rejecting any of those made by the jury.

3. Condonation: The contention is made that this court was in error in considering the matter of condonation·at all, for the reason that, being a special defense, it could not avail the defendant, unless it had been specially pleaded in her answer. Speaking generally, this defense, as a bar to the action, cannot be made of avail by the defendant unless it be alleged in the answer. It is like any other defense in the nature of confession and avoidance, and therefore a special defense—such as payment in actions upon contract for the recovery of money, or of accord and satisfaction, or contributory negligence in actions for personal injuries—of which the plaintiff is entitled to notice. This view is supported by the great weight of authority. (7 Ency. of Pl. & Pr. 92; *Warner* v. *Warner,* 31 N. J. Eq. 225; *Moore* v. *Moore,* 41 Mo. App. 176; *Smith* v. *Smith,* 4 Paige, 432, 27 Am. Dec. 75; *Clague* v. *Clague,* 46 Minn. 461, 49 N. W. 198; 14 Cyc. 671; *Hunter* v. *Hunter,* 132 Cal. 473, 64 Pac. 772; *Pastoret* v. *Pastoret,* 6 Mass. 276; 2 Bishop

on Marriage and Divorce, 337.)   But though this is true, yet, when the issue has been contested in the evidence without objection, as in this case, and it clearly appears that the offense or offenses alleged in the complaint have been condoned, it is clearly the duty of the court to deny relief.   An action for divorce is peculiar in its nature, in that, besides the interests of the parties involved, the public is also interested, and for this reason the conscience of the court is appealed to by this interest not to permit the divorce unless the facts presented on the whole record justify it.   So that if, upon the whole of the evidence, it appears that the offense alleged in the complaint has been condoned, the divorce should be denied.   (2 Bishop on Marriage and Divorce, sec. 231 *et seq.;* Id., sec. 338.  See, also, cases cited *supra.*)   This being the case, the court has before it interests to be adjudged and determined, separate and distinct from those of the parties, and these may not be ignored or disregarded.   If, owing to the peculiar nature of the action and the interests of the public, this duty results, none the less imperative is this duty under the mandate of the statute (section 160, Civil Code), which declares that a divorce must be denied upon a showing of condonation.

It is said, however, that the evidence on the subject of condonation is conflicting, and that for this reason the court, under an unbroken line of its own decisions rendered during the past twenty-six years, is not at liberty to disregard the findings of the district court, express or implied, and make up its own conclusion upon the evidence.   This rule has always heretofore been observed by this court, as is evidenced by the decisions referred to, both in equity cases and cases at law.   In equity cases, however, the rule has been changed by Act of the legislature, whereby it is made the duty of this court to determine all questions of law and of fact involved, unless for a good reason a new trial or the taking of other evidence in the district court be ordered.   (Act of 1903, 2d Extra Session, p. 7.)   This statute seems to have been overlooked by counsel.   Whether the power conferred by it was already vested in the court without legislative enactment or not we shall not now pause to in-

quire. It is sufficient to say that, in so far as the decisions referred to are concerned, they do not now apply in the strict sense to equity cases, and this court has power, and it is its duty, so far as it may, exercising a due regard for the findings of the district court, based, as they are, upon the testimony of witnesses delivered *ore tenus* in the presence of the court, to reach its own conclusions, and to declare upon the rights involved accordingly. Owing to the advantageous position of the trial court, due to the conditions just adverted to, this court will naturally hesitate to overturn findings based upon substantially conflicting evidence which would justify an inference in favor of either side of the controversy; but where the conflict is trifling or unsubstantial or where the evidence preponderates decidedly against the finding, this court may, looking to the nature of the evidence, proceed to examine it, and make up its own conclusion. Other states have constitutional provisions similar to ours touching the jurisdiction of their appellate courts, and also statutes similar to the Act of 1903, *supra,* and their courts in construing them have announced the rule governing their application substantially as stated above. (*Randall* v. *Burk Township,* 4 S. D. 337, 57 N. W. 4; *Faulkner* v. *Sims* (Neb.), 94 N. W. 113; *Snyder* v. *Wright,* 13 Wis. 689; *Fisher* v. *Farmers' Loan & Trust Co.,* 21 Wis. 74; *Boggess* v. *Boggess et al.,* 127 Mo. 305, 29 S. W. 1018.)

Remarking upon a similar statute, the supreme court of South Dakota, in *Randall* v. *Burk Township, supra,* said: "This court will not decide the case upon the weight of evidence, as a trial court may do, but will only reverse the decision of the trial court where there is a clear preponderance of evidence against the decision of the court below. The presumption is in favor of the decision of the trial court upon the weight of evidence, which this court will respect; and therefore it is only when this court finds there is a clear preponderance of evidence against such a decision that the presumption above stated will be overcome. It becomes our duty, therefore, not only to determine if there is a substantial conflict in the evidence, but to determine the case upon the weight of evidence, having the above qualification in view."

In *Faulkner* v. *Sims, supra,* the supreme court of Nebraska states the rule thus: "It is a matter of common knowledge that a written record cannot reflect the oral testimony at the trial with absolute accuracy. For these reasons it is eminently proper that findings on conflicting evidence in such cases be adhered to, unless clearly wrong. It must not be forgotten, however, that there are sometimes advantages on the side of the reviewing court. In long and complicated equity cases, especially where an accounting is involved, there is a marked difference between reaching a finding on one's recollection of what he has heard in the course of a trial lasting weeks, or even months, and a finding as a result of patient investigation of a written record, with the aid of printed briefs, where comparisons may be made, computations tested, circumstances weighed, and conflicting statements sifted, upon the certain and assured foundation of a written page. Moreover, the court is instituted to review causes, and the right to resort to it for that purpose is guaranteed by the Constitution. It has no right to renounce its functions. If, giving due weight to every advantage possessed by the trial court in the particular case, it is satisfied that a finding is clearly wrong, it should set such finding aside, notwithstanding there may be some competent evidence in support thereof; otherwise it has not fulfilled its duty of reviewing the finding when properly challenged." The case of *Boggess* v. *Boggess et al.,* cited, is an application of the same rule, though apparently not founded upon a statute.

The evidence upon which our finding that the adulteries alleged had been condoned is based consists of facts admitted or proved by the plaintiff, and positive evidence introduced by the defendant. In addition to the facts stated briefly in the third paragraph of the former opinion, there is a great deal of other evidence in the record, a reference to which will show that the conclusion stated therein is amply justified.

This action was brought on January 26, 1899. The ground alleged was desertion by the defendant. This pleading was amended on February 25, 1899, when for the first time adultery was charged, but in such general terms that the amended

pleading was properly held demurrable. Then, by another amendment, specific charges were made, giving dates, places, names, etc. Upon the issues made on these specific charges the trial was had. During the trial evidence was introduced tending to show various adulteries committed by the defendant with one Lyman A. Sisley from and after August 6, 1897. Of these, three were found by the court to have been established, to wit, one committed at 825 West Broadway, in the city of Butte, on December 23, 1897; a second committed during the year 1897 at 825 or 827 West Park street; and a third committed in the Weyerhorst Block, in Butte, on November 30, 1896. Witnesses testified to similar acts at various places in the city of Butte during the year 1897, one of which was as early as August 6th. The evidence shows conclusively that the defendant had suspected his wife of infidelity for three or four years, and that during the year 1897 he had employed different persons to obtain conclusive evidence against her. Knowledge was brought home to him of some of the acts charged as early as August 6th. He was informed of subsequent offenses up to and including December 23d, immediately after they are alleged to have been committed. One of these persons employed to secure evidence was his own brother. Yet during all the time that he entertained these suspicions and was having search made for evidence, and after he had obtained knowledge from his witnesses of his wife's adulterous acts, he made no charge against her until a few days before she left his house, but allowed her to remain there and preside at his table. During most of this time he occupied a bed in an adjoining room. Part of the time he occupied the same room and bed; and when she left his house it was at his suggestion, he first saying that she had best go for two or three months, presumably until the scandalous rumors which had started concerning the matter had subsided. Then he urged her to go, but in the meantime cohabited with her just as before. It is true that he denies that he occupied the same bed with her after knowledge was brought home to him, but, in view of the facts already stated, the direct contradictions by the defendant and her uncle, Farlin, and the fact that the plaintiff produced in court the same witnesses who had informed

him of her various acts of infidelity to establish them as grounds
for a divorce, without any additional fact or circumstance tend-
ing to show that their statements were deemed by him any more
worthy of credit at the time the action was brought and at the
trial than they were in 1897, we must conclude that he fully
condoned her conduct, and cannot now be heard to complain of
it; since, so far as this record shows, she has not, since she left
his house, nor at any time subsequent to December 23, 1897,
been guilty of any similar offense. The authorities cited in
the former opinion fully sustain this conclusion upon the facts
in this record. According to our view of the principles of law
applicable, the issue as to condonation was properly in the case,
and the district court must have found upon it in favor of
plaintiff. The evidence preponderates so strongly against this
finding that we think it should be set aside, and the contrary
finding made.

We have, for the purpose of this discussion, assumed that the
evidence fully establishes the guilt of the defendant of the acts
of adultery found by the court. We do not care to be under-
stood, however, as making this assumption for any other pur-
pose. The evidence in the case is not of a satisfactory char-
acter, and we would hesitate to reach the conclusion arrived at
by the district court in this record. Indeed, there are many
features of the evidence introduced by the plaintiff which jus-
tify a very strong suspicion, to say the least, that the charges of
adultery are the result of a conspiracy on the part of the plain-
tiff and some of his witnesses to establish a false charge against
the defendant. The conclusion already reached renders it un-
necessary to discuss this phase of the evidence. Nor is it neces-
sary to consider and determine the numerous other questions
pressed upon our attention. The judgment and order are re-
versed, and the cause is remanded, with direction to the district
court to dismiss the action.

*Reversed and remanded.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.