ORTON, RESPONDENT, *v.* BENDER, APPELLANT.

(No. 2,940.)

(Submitted April 17, 1911. Decided April 29, 1911.)

[115 Pac. 406.]

*Mining Claims—Adverse Suits—Appeal—Credibility of Witnesses — Review—New Trial — Surprise — Newly Discovered Evidence—Discretion—Error—Presumptions.*

Appeal—Equity Cases—Insufficiency of Evidence—Findings—Conclusiveness.

1. To secure a reversal of the decree in an equity case on the ground that the evidence is insufficient to sustain the findings of the court, the appellant has the burden of showing that the evidence preponderates against them.

Same—Equity Cases—Credibility of Witnesses—Review.

2. In a cause tried without a jury, the credibility of the witnesses is a matter exclusively for the trial court to determine.

New Trial—Surprise—What does not Constitute.

3. That defendant in an adverse suit, relying upon the idea that plaintiff would attack his quartz location upon a certain ground, had prepared his case to meet that ground, but on the trial was confronted with a different theory, was not a valid ground for a motion for new trial because of accident and surprise. A party litigant must be prepared to meet all issues raised by the pleadings.

Same—Newly Discovered Evidence—Discretion.

4. The granting or refusing of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court; in the absence of abuse of such discretion, its ruling will not be disturbed on appeal.

Appeal—Error—Presumptions.

5. Error must be made to appear; it will not be presumed.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by William C. Orton against Lewis B. Bender. Judgment for plaintiff, and defendant appeals from it and an order denying him a new trial. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Kirk, Bourquin & Kirk,* for Appellant.

*Mr. L. P. Forestell,* and *Mr. I. A. Cohen,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In October, 1907, Lewis B. Bender made application in the United States land office for patent to the Friday lode claim. Within the period of publication of notice, William C. Orton filed his protest and adverse, claiming that a portion of the ground included in the Friday claim belongs to, and is included in the boundaries of, the Merchant lode claim, owned by Orton. The adverse was allowed and proceedings in the land office stayed. Within thirty days thereafter, this action was commenced by Orton to quiet title to the area in conflict. The plaintiff claims the disputed portion, by virtue of his location of the Merchant lode claim, made February 20, 1906. The defendant claims the same ground by virtue of the Friday lode claim, which it is alleged was located August 16, 1905. The cause having been brought to issue was tried to the court without a jury. Findings of fact and conclusions of law were made, and a decree rendered and entered, adjudging plaintiff to be entitled to the disputed territory. From that judgment and an order denying him a new trial, the defendant appealed.

The trial court found that in August, 1905, Bray and Spencer, the predecessors of defendant, made discovery of mineral-bearing rock in place and posted notice, claiming the ground as the Friday lode claim; that they marked the boundaries, and, on October 26, filed for record the declaratory statement containing the matters required by statute. Finding No. 5 is as follows: "That neither of said locators, Bray or Spencer, or either of them, or the defendant, at any time within sixty days, or at any time prior to February 20, 1906, subsequent to August 16, 1905, sank or caused to be sunk, at the point of discovery, or elsewhere upon said claim, a shaft at least ten feet deep from the lowest part of the rim of such shaft at the surface, or of any greater depth than eight feet and nine inches." The court further found that the locators of the Friday claim, after posting notice, altered the notice by changing the date from August to October, for the purpose of postponing the time within which

the development work would have to be done, and that they used as a part of their discovery shaft an old, abandoned hole. Finding No. 20, made by the court, follows: "That the locators of the alleged Friday lode claim did not, at any time prior to the 20th day of February, 1906, intend in good faith to sink a discovery shaft upon said lode or claim to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper, if necessary to show a well-defined crevice or valuable deposit, within sixty days from the date of posting said notice upon said claim." The court also found that Orton made discovery and a valid location of the ground in controversy on February 20, 1906, and perfected his location of the Merchant lode claim.

While there are many assignments of error, counsel for appellant in their brief say: ",The only serious question in this case is whether or not the Friday locators sunk the Friday discovery shaft ten feet below the lowest point of the rim before February 20, 1906, when respondent initiated his Merchant lode location." They also contend that the evidence preponderates in favor of an affirmative answer to this question. We are not able to agree with counsel that there is not a substantial conflict in the evidence as to the extent and character of the development work done on the Friday lode claim prior to February 20, 1906.

Since the defendant relies upon a discovery made in August, 1905, and insists that by virtue of the acts done by him and his predecessors in interest the area in conflict was withdrawn from the public domain, and was not subject to location on February 20, 1906, when plaintiff made discovery and attempted to locate the Merchant claim, it must appear that the defendant complied with the requirements of the law prior to February 20, 1906. Those requirements in force at that time were: "(1) The discovery of a vein or lode; (2) the posting of a notice of location at the point of discovery containing the matters designated by section 3610 [Political Code, 1895]; (3) the marking of the boundaries on the ground, and the doing of certain development work, designated in section 3611; and (4)

the filing for record of a declaratory statement containing the matters mentioned in section 3612." (*Butte Consolidated Min. Co.* v. *Barker,* 35 Mont. 327, 89 Pac. 302, 90 Pac. 177; *Butte Northern Copper Co.* v. *Radmilovich,* 39 Mont. 157, 101 Pac. 1078; *Thornton* v. *Kaufman,* 40 Mont. 282, 135 Am. St. Rep. 618, 106 Pac. 361.) The development work which the statute then required, so far as involved here, consisted in sinking "a shaft upon the lode or claim to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper, if necessary to show a well-defined crevice or valuable deposit." (Section 3611, above.)

In speaking of this development work, the court, in *Butte Consolidated Min. Co.* v. *Barker, supra,* said: "The doing of this development work and the filing for record of the declaratory statement are purely statutory requirements, which the state may rightfully exact in addition to the acts required by federal statutes." And again: "The requirements that a shaft be sunk upon the claim ten feet deep, or deeper, if necessary to disclose a well-defined crevice or valuable deposit, * * * has a double purpose in view: '(1) To demonstrate to a reasonable degree of certainty that the deposit sought to be located as a lode is in fact a vein of quartz or other rock in place; (2) to compel the discoverer to manifest his intention to claim the ground in good faith under the mining laws.'"

The trial court found that the defendant failed to comply with the requirements of the statute in a material respect. To [1] secure a reversal of this finding, the appellant in this court must assume the burden of showing from the record that the evidence preponderates against the finding made. In *Kift* v. *Mason,* 42 Mont. 232, 112 Pac. 392, this court said: "It is the rule in this state, now too well established to be open to further controversy, that on appeal in an equity case the findings of the trial court will be sustained, unless it appears that the evidence preponderates against such findings"; citing *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Pope* v. *Alexander,* 36 Mont. 82, 96 Pac. 203, 565; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860.

It appears from the record that the presiding judge of the trial court was invited to inspect the property in controversy during the course of the trial, and counsel for respondent in their brief assert that such inspection was made. We shall assume this to be the fact, though it is not of very much consequence here. A review of the evidence discloses a very pronounced conflict upon almost every question presented for determination, particularly upon the question of the character and extent of the development work done upon the Friday claim. To set forth even a brief summary showing the conflict would not serve any useful purpose.

It does not aid defendant that the trial court in some of its findings apparently discredited witnesses for the plaintiff. In *Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013, we held that the [2] credibility of a witness is a matter exclusively for the trial court to determine, in a case submitted without a jury. The trial court had the witnesses before it, heard them testify, observed their demeanor on the witness-stand, and was in a much more advantageous position to judge of their credibility and of the weight to be given to their testimony, than are the members of this court. Upon the evidence before us, we cannot say that the trial court was not fully justified in finding that the locators of the Friday claim did not do the development work required by law—in fact, that they did not act in good faith in attempting to locate the Friday claim.

One ground of the motion for a new trial is accident and surprise, which ordinary prudence could not have guarded against, and another is newly discovered evidence. Issue was made upon the validity of the location of the Friday claim in [3] the pleadings, and defendant cannot now be heard to say that plaintiff attacked that location upon a ground different from the one he was led to believe would be relied upon by the plaintiff. A party litigant must prepare himself to meet all issues raised by the pleadings, and if he does not do so, he cannot plead accident or surprise after he has been defeated. In *Hill* v. *McKay,* 36 Mont. 440, 93 Pac. 345, this court considered a similar question, and our observations then made are

pertinent here and conclusive against appellant on this ground of his motion.

Defendant presented to the trial court an affidavit of J. H. Crone, to the effect that affiant had measured the discovery shaft on the Friday claim in 1905, and then ascertained that it was more than ten feet deep from the lowest part of the rim. Plaintiff presented a counter-affidavit by J. H. Tiggerman, to the effect that he has known Crone for sixteen years, that he knows Crone's reputation for truth and veracity in the neighborhood where he lives, and that the same is bad. In *Landeau* v. *Frazier*, 30 Mont. 267, 76 Pac. 290, this court said: "In most respects this new evidence would be merely cumulative and of an impeaching nature. As the granting or refusing of a [4] new trial upon the ground of surprise or newly discovered evidence rests largely in the discretion of the trial court, and as the record does not disclose an abuse of discretion in this instance, the ruling of the court below will not be disturbed"; citing numerous cases. The language just quoted is peculiarly applicable here.

The record includes all the evidence taken before the trial court touching the discovery and location of the Merchant claim, although there is not any attack made upon that location. It is conceded that the Merchant claim is valid, if the ground was open to entry on February 20, 1906. Much needless expense has been incurred in preparing the transcript for this court. Counsel for appellant in their brief assert that respondent is responsible for this, but the only recital in the record is: "On October 6, 1909, and within the time allowed therefor by the court, defendant duly served his proposed bill of exceptions upon plaintiff; and within time allowed therefor plaintiff duly served his proposed amendments of 127 pages upon defendant. The amendments were thereafter allowed by the court and incorporated herein." It is impossible for us to determine the character of the amendments proposed. It does not appear that counsel for defendant objected to the allowance of the amendments, and we must assume that they were proper and cor-

rectly incorporated as a part of the record. Error must be made to appear. It will not be presumed.

The judgment and order are affirmed.

*'Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.